The Chicago, Danville and Vincennes Railroad Company

*v.*

· The City of Chicago.

*Filed at Ottawa May 12, 1887.*

1. Railroads — use of streets — *certainty required in giving the right—an ordinance construed.* A permission to a railway company to occupy a public street with railway tracks, must plainly appear, and not be left to be derived by doubtful implication, from the generality of language used, which does not unmistakably manifest the intention to give such permission.

2. A city ordinance, after a careful mention and specification of what streets might be used by a railway company in which to lay down its tracks and side-tracks, contained a general clause giving authority also to lay down all such tracks "as may be necessary to the convenient use of any depot grounds said company may now own or hereafter acquire in the vicinity of or adjoining said line of road," without the specific mention of any streets: *Held*, that such general clause gave no authority in respect to the use of the streets, additional to those which had been specifically named in the preceding part of the ordinance.

3. Same—*grant in charter, as not extending to use of streets in incorporated cities.* Authority in the charter of a railway company to construct a railroad from Vincennes, in Indiana, to and into the city of Chicago, with the general power to cross any road or highway on the route, is to be held only as giving such power outside of the corporate limits of the city. By no fair intendment can it be held as a grant of the use of the streets of the city for tracks of the road.

Appeal from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. Thomas A. Moran, Judge, presiding.

The Chicago, Danville and Vincennes Railroad Company was incorporated by a special charter of the State of Illinois, February 16, 1865. (2 Laws of 1865, p. 140.) The company was, by its charter, authorized to construct a railroad from Vincennes, Indiana, with a single or double track, to and into the city of Chicago, and to locate said road through its whole length, with a width of one hundred feet, and to

appropriate land for that purpose.    The railroad company was also authorized by its charter to cross any road or highway along its route, provided the same was crossed in a manner not to impair the use of such road or highway.    Said railroad enters the city of Chicago from a point near the intersection of Western avenue and Kinzie street, over the same tracks as the Pittsburg, Cincinnati and St. Louis Railroad Company, which company embraces the corporations formerly known as the Chicago and Great Eastern Railway Company, and the Columbus, Chicago and Indiana Central Railway Company.

On October 8, 1866, an ordinance was passed by the common council of the city of Chicago, giving to the Chicago and Great Eastern Railway Company the right to enter and pass through the city of Chicago, and certain streets thereof, commencing at or near the intersection of Western avenue and Kinzie street, and running eastwardly along the south side of Kinzie street to a point between North Morgan and North Sangamon streets, and from thence eastwardly, between Kinzie and Carroll streets, now known as Carroll avenue, to Halsted street, from thence eastwardly on Carroll street, or Carroll avenue, to the Chicago river.    By section 4 of the ordinance above cited, the railroad company was also authorized to lay down, maintain and operate, in addition to the tracks before mentioned, "all such tracks, turn-outs and switches as may be necessary to the convenient use of any depot grounds such company may now own or hereafter acquire in the vicinity of or adjoining said line of road, and to form connections with other roads."

On April 1, 1872, the common council of the city of Chicago passed an ordinance authorizing the Columbus, Chicago and Indiana Central Railway Company, (which company was the same company as, and the successor of, the Chicago and Great Eastern Railway Company, before mentioned,) to put

12—121 ILL.

down, construct and maintain a railroad, with single or double track, across and upon certain other streets in the city of Chicago. By section 9 of the last mentioned ordinance, all the permission and authority granted therein, together with all permission and authority granted in the previous (or Great Eastern) ordinance, above mentioned, were made conditional upon the grantees thereof permitting the Chicago, Danville and Vincennes Railroad Company to use the tracks thereby in either ordinance authorized to be laid.

The said Chicago and Vincennes Railroad Company, shortly after receiving its charter, began the construction of its railroad from Vincennes, Indiana, to the city of Chicago, entering the city of Chicago, as before stated, from a point at or near the intersection of Western avenue with Kinzie street, thence running eastwardly upon the tracks of the Columbus, Chicago and Indiana Central Railway Company, as authorized in the first of the above mentioned ordinances. In order to accommodate its freight traffic, (there being no property immediately upon the main line of road, before mentioned, available for that purpose, all such property having been already acquired by the other railroad companies using said line of track,) said company purchased, for its use as such freight depot, block 14, in Carpenter's addition to the city of Chicago, situated between Carroll avenue, Fulton, Carpenter and Morgan streets. This property is situated about two hundred feet from the main line of road before mentioned, being separated therefrom by Carroll avenue. In order to reach such freight depot, a side-track or spur was built, commencing on the main track aforesaid, a little west of North Ann street, thence crossing property of the company diagonally, and in a south-easterly direction, and crossing Ann street near said main line of track, thence crossing Carroll avenue at the intersection of North May street, thence through property of the company, and crossing North Curtis and North Carpenter streets, to said freight depot. The annexed map of the ter-

ritory and tracks may aid in a better understanding of the situation:

This side-track, or spur, except where crossing the public
street, is entirely upon property of the company, or of one
of the other railroad companies having a joint right of its
use.   This side-track was laid down about the beginning of
the year 1873, and the company immediately commenced to
operate and use it, and to run cars over it, and to use the
freight depot.   After this had been going on for some months,
the city of Chicago, acting through a board of public works,
forcibly tore up this side-track, at its crossings over Carroll
avenue, North Curtis and North Carpenter streets.   The com-
pany *immediately attempted to re-lay the same, and in the*
month of February, 1873, exhibited its bill herein, in. the
circuit court of Cook county, praying for an injunction to
restrain the city from again tearing up such side-track.   A
temporary injunction was issued.   In June following, the case
came on for hearing upon the bill and answer, and the city's
motion made. to dissolve the injunction, and upon affidavits
read, and the motion to dissolve was denied.   The re-laying
of the track was then completed, under direction of the court.
For some reason no final decree was ever entered, and the
case was stricken from the docket.   In 1884, the city applied
to have the case re-docketed, which was done, and in May,
1886, a hearing was again had before the circuit court of Cook
county, upon the same pleadings and proofs as before, and
a decree was rendered dismissing the bill.   An appeal was
taken to the Appellate Court for the First District.   That
court being divided upon the case, one judge having made
the decree below, and the two remaining members being di-
vided in opinion, so that no judgment of reversal could be
entered, the decree below was necessarily affirmed, and this
appeal was taken by the complainant.

Mr. Arthur Ryerson, for the appellant:

Appellant was authorized by the city ordinances to lay the
tracks in question to depot grounds.   Section 4 of the Great

Eastern ordinance gives the right to locate such tracks "as may be necessary for the use of any depot grounds in the vicinity of or adjoining said line of road." The depot grounds are less than two hundred feet from the main track. As to the right to lay down such switch to the depot, see the following cases: *Railroad Co.* v. *New Orleans,* 1 La. Ann. 128; *Knight* v. *Railroad Co.* 9 id. 284; *Springfield* v. *Railroad Co.* 4 Cush. 63; *Iron Works Co.* v. *Railroad Co.* 87 Mass. 231; *Railroad Co.* v. *Railroad Co.* 67 id. 340; *Jenkins* v. *Railroad Co.* 29 Iowa, 255; 99 Pa. St. 155.

The laying of the tracks in the street is conferred by the charter of the company. 2 Laws of 1865, p. 140.

The legislature has the power to grant such use of a public street. *People* v. *Walsh,* 96 Ill. 232; *Sawyer* v. *Alton,* 3 Scam. 130.

Mr. Clarence Knight, and Mr. H. O. McDaid, for the appellee:

Appellant has no right, under the ordinance, to lay down its tracks except "within the district aforesaid," which is described in the same. It can not go out of the streets named in the first part of the ordinance. The point at which the track crosses Curtis street, in approaching west from the freight depot, is outside the limits of the defined district. *Patterson* v. *Railroad Co.* 75 Ill. 590.

At the time appellant's charter was granted, (1865,) the general Railroad act of 1849 was in force, the 24th section of which provided, that the assent of the city council should be necessary to authorize the company to locate its track within any city. Full power over the streets, in respect to the location of railroad tracks therein, was conferred on the city. Laws and Ordinances of 1873, pp. 411, 406; *Moses* v. *Railroad Co.* 21 Ill. 516; *Railroad Co.* v. *Potter,* 82 id. 208; *Railroad Co.* v. *Dunbar,* 100 id. 110.

Mr. Justice Sheldon delivered the opinion of the Court:

There is no permission given by the city ordinance to lay a railroad track upon these streets specifically, except Ann street, which are crossed by this side-track in question. But the permission is claimed to be derived from the general language of the latter provision of the fourth section of the ordinance of October 8, 1886, which is, to lay down such tracks "as may be necessary to the convenient use of any depot grounds said company may now own or hereafter acquire in the vicinity of or adjoining said line of road, and to form connections with other roads." It is said this side-track is in the vicinity of or adjoining the line of the road,—that the proof establishes the side-track is necessary to the convenient use of the depot grounds, and thus that the laying of this track comes within the express grant of authority by the words of this provision. The occupation of the street of a city with a railroad track is of very serious concern, as regards the public and property owners upon the street, and a permission which is set up to so occupy a public street, should plainly appear, and not be left to be derived, by doubtful implication, from the generality of language which does not unmistakably manifest the intention to give such permission.

To arrive at what was the meaning of the ordinance with respect to streets, it is proper to look at all of its provisions. Section 1 gives permission and authority to the company to construct a railroad with a single track, in the south part of Kinzie street, from Western avenue eastward to a point in said Kinzie street between North Morgan and North Sangamon streets. By section 2 the company is also authorized to lay down and operate one or more railroad tracks "on any ground which said company now owns or may hereafter acquire, * * * between *Kinzie and Carroll* and between Morgan and Halsted streets, and also to lay down, maintain and operate any such track or tracks, turn-outs and switches,

across any street or streets and alleys within the district aforesaid." By section 3 the company is also authorized to lay down and operate one or more railroad tracks on Carroll street, from Halsted street eastward to the Chicago river, with the right to cross said Halsted street, and all intervening streets between those limits. By section 4 the company is also authorized to lay down and operate one or more railroad tracks "on any ground which said company now owns or may hereafter acquire, * * * between North Halsted street and the Chicago river, and between Carroll and Fulton streets, and also to lay down, maintain and operate any such track or tracks, turn-outs and switches, across any street or streets and alleys within the district aforesaid, *and also all such as may be necessary to the convenient use of any depot grounds said company may now own or hereafter acquire in the vicinity of or adjoining said line of road, and to form connections with other roads,* and also to acquire and use all such depot grounds, and to erect thereon such buildings as said company shall deem necessary for the convenient transaction of its business."

Thus it will be seen, that until this general clause in section 4 is reached, the authority which is given for the use of streets is specific, precise, and most guardedly limited. A route is given for the railroad from Western avenue eastward to the Chicago river, and what streets may be used, and the extent to which they may be used, are specifically defined. A single railroad track may be laid in Kinzie street eastward to a point therein between North Morgan and Sangamon streets. Morgan street is the fourth street west from Halsted, the streets running, Halsted, Green, Peoria, Sangamon and Morgan. Authority is then given to lay down and operate one or more railroad tracks on any ground the company owned or might acquire, between Kinzie street and Carroll avenue, and between Morgan and Halsted streets, and to cross any street or streets within that district. This would authorize the

company to come down from Kinzie street south to the north line of Carroll avenue, but not to use that avenue. Then the further authority was given to lay down and operate one or more railroad tracks on Carroll street, from Halsted street eastward to the Chicago river, with the right to cross said Halsted street and all intervening streets between those limits. Here was authority to use Carroll avenue eastward from Halsted street, and there was given the further authority to lay down and operate one or more tracks on any ground the company then owned or might acquire, between North Halsted street and the Chicago river, and between Carroll and Fulton streets, and to cross any street or alley within that district. Thus all the authority which was given to use Carroll avenue, was to use it eastward from Halsted street. There was no authority given to use it westward from Halsted street, or to use May and Carpenter streets south of Carroll avenue.

After such careful mention and specification of what streets might be used, as had preceded in the ordinance, then follows the general clause upon which the disputed construction arises, immediately after the authority to lay tracks across any street or alley within the district aforesaid, "and also all such as may be necessary to the convenient use of any depot grounds said company may now own or hereafter acquire in the vicinity of or adjoining said line of road." There is no specific mention of streets in this general clause, and to hold that under it any other streets might be used than those specified in the preceding part of the ordinance, would make it indefinite and uncertain what streets might be made use of under this clause, and leave it for the railroad company to determine. We do not think that was the intention of the common council, but that it was their purpose to fix and limit precisely what streets might be used. And, in our judgment, the true construction of this general clause of the ordinance is, that it gave no authority, in respect of the use of streets, additional to what had been granted by the preced-

ing part of the ordinance; that what streets might be used were specifically defined and limited by the ordinance, and that under this general clause there was not given authority to make use of any other streets than those which the ordinance had specifically named might be used.

It is claimed the railroad company was authorized, by its charter, to lay and maintain the track in question. The charter gives no express authority to cross any streets in the city of Chicago. It but gives authority to construct a railroad from Vincennes, Indiana, to and into the city of Chicago, with the general power to cross any road or highway on the route, which is to be held as only giving such power outside of the corporate limits of the city. By the amended charter of 1863, of the city of Chicago, the common council was given the power "to direct and control the location of railroad tracks." Laws and Ordinances of 1873, p. 406.

In the case of *Moses* v. *Railway Co.* 21 Ill. 516, the court said: "By the city (Chicago) charter the common council is vested with the exclusive control and regulation of the streets of the city, the fee simple title to which we have already decided is vested in the municipal corporation. The city charter also empowers the common council to direct and control the location of railroad tracks within the city."

This question would seem to be sufficiently disposed of by what was said in the case of *St. Louis, Vandalia and Terre Haute Railroad Co.* v. *Haller*, 82 Ill. 208. In that case it was claimed, under a charter similar to this one, that the railway company had the right to cross streets within a corporation without any ordinance giving the permission, and the court said: "It is urged that the fee to the streets was in the town, and that it being a municipal corporation, and under the control of the legislative power of the State, the General Assembly had power to grant the streets to the use of railway companies, for the construction and operation of their roads, and that the General Assembly, in passing the

charter of this company, granted them the use of this street by authorizing them to pass through the town. By no reasonable or fair intendment can it be held that the grant of authority to run their road through the town, operated as a grant of the use of the streets, or either of them, to the company, for the purpose."

The decree will be affirmed.

*Decree affirmed.*