Williams, J.
Briefly stated, the propositions urged in argument in support of the plaintiff’s claim to the relief it seeks, are: (1) That the council of the defendant had no jurisdiction over the streets in question, and therefore no authority to order their improvement, because they were originally parts of county roads: (2) That the improvement, if made in conformity with the ordinances of February 7, 1893, will involve the taking of the plaintiff’s property, for ’which no compensation has been paid or tendered: And, (3) that by the ordinance of December 20, 1887, the plaintiff acquired the right to perpetually maintain the bridges as constructed over its roadway where it crosses the streets, and the improvement contemplated, will, necessarily, be a violation of that right, which the plaintiff is entitled to prevent by injunction. These propositions may be conveniently considered in the order stated.
(1) It appears from the uncontroverted allega-tions of the pleadings, that when the railway now operated by the plaintiff was constructed through the county of Defiance, the Brunersburg and Holgate roads were county roads leading to, and connecting with the streets of the incorporated village of Defiance, and were crossed by the rail-' road a short distance outside of the corporate limits of that village. The crossings were made by cutting through the roadways and placing the railroad track about eighteen feet lower than their traveled surface. Wooden bridges were built over the track from one side of the cut to the other. Afterward, and before 1887, the corporate limits of the village were so extended, by the annexation of contiguous territory, as to embrace the portions of the highways mentioned, at and beyond *299 the place where the railroad so crossed them; that portion of the Brunersburg road included in the annexation being since known as Ralston avenue, and the. part of the Holgate road so included, as North Clinton street. To enjoin the improvement of these streets, by grading, under the ordinances of February 7, 1893, was the purpose of the plaintiff’s action. While counsel for the plaintiff concede that the parts of the county roads so brought within the defendant’s corporate limits became highways of that municipality, they contend it acquired control of them, in the language of the petition, “for police purposes only,” by which we understand counsel to mean, that the defendant was without authority to improve them at all, or, if improved, the expenses should be paid by tax collected from the property of the whole county. This position is, we think, untenable. The highways so brought within the corporate limits of the defendant, were removed from, the control which the ■ county commissioners theretofore had over them, and became subject to the control, supervision, and care of the municipal authorities, like other streets and highways of the corporation. By express statutory provision, the council is given “the care, supervision and control of all public highways, streets, avenues, alleys, sidewalks, public grounds and bridges' within the corporation,” and is charged with the duty of causing “ the same to be kept open and in repair, and free from nuisance. ” Section 2640, Revised Statutes. The duty thus devolved upon the council is attended with the power to do whatever may be necessary in the proper and lawful performance of the duty, including the power to improve such ways, or parts thereof, in any lawful manner, when, *300 and as, the public convenience may demand. Grading a street, and changing its grade, when necessary for its convenient use by the public, are lawful modes of improving the street, and keeping the same open and in repair. Smith v. Washington, 20 How., 135. Our statutes have conferred the power to make such improvements upon all municipal corporations,' and authorized the costs and expenses thereof to be assessed upon all the taxable property within the corporation, as is provided by the ordinances of February 7, 1893, for the improvement of the streets in question. Revised Statutes, sections 1692, 2263, 2301. And the exercise of such power has been repeatedly recognized and upheld by this court. Cincinnati v. Penny, 21 Ohio St., 499; Youngstown v. Moore, 30 Ohio St., 133; Akron v. Chamberlain, 34 Ohio St., 328; Cincinnati v. Whetstone, 47 Ohio St., 196; Cincinnati v. Sherike, Ibid, 218. The bridg.es over the plaintiff’s railroad where it crosses the two streets referred to, are parts of those streets, substitutes for the soil taken out in making the cut for the railroad crossings, and like other parts of the streets, are within the control of the municipal authorities of the defendant. Beach on Pub. Corp., 1470.
But it is claimed that, notwithstanding the corporate boundaries of the defendant were so enlarged as to embrace those portions of the county roads sought to be improved, the exclusive jurisdiction and control of the county commissioners over them is preserved by section 4906, of the Revised Statutes, which provides that: “The commissioners shall keep in repair such portion of such roads' within their respective counties as have since their completion been included, or may *301 hereafter be included, within the corporate limits of any city or village in such counties, to points therein where the sidewalks have been curbed and guttered, and no further.” This section is a part of the chapter «of the Revised Statutes relating to the repair of improved roads, and the “such roads,” therein referred to, are those mentioned in section 4876, viz.: “McAdamized or graveled roads, which are free roads constructed under general or local laws by taxation or assessment, or both, or converted from a toll road into a free road, and turnpike roads or parts thereof unfinished or abandoned by the company and appropriated or accepted by the commissioners of the county. ” The plaintiff’s petition does not allege, nor does it otherwise appear that either of the county roads, or any portion of either taken into the corporate limits of the defendant, belongs to any of the above mentioned classes of highways; but the contrary is shown by the plaintiff’s evidence. It is quite clear, therefore, that section 4906 has no application to the roads involved in this case; and, where applicable, it has no other effect than to cast on the commissioners the burden of keeping the roads to which it relates in repair, until otherwise improved by the city or village, and does not exclude the power of the municipal authorities to improve them at their discretion.
2. That the taking of private property for a public use, without compensation to the owner, is distinctly forbidden by the constitution of this state, is not doubted. Precisely what property of the plaintiff will be taken in making the improvements entered upon by the • defendant, is not so clear. The plaintiff’s roadway is in no wise disturbed, but remains as it was originally con *302 strueted; its franchises are not abridged or affected; nor can it be claimed that it will be deprived of any of its tangible property, unless it be the bridges, whose removal becomes necessary m the construction of ‘the improvements. It certainly has no proprietary interest in the approaches to the bridges, consisting of fills made in the streets, and devoted to the public use when placed there; no private ownership in the soil so placed remained in the plaintiff, nor did the labor or expense of placing it there give the plaintiff any property right in the streets. If it be held that the bridges are not in exactly the same category, but are the property of the plaintiff, it is not shown that they, or the material in them were, or will be appropriated by the defendant, or the plaintiff otherwise deprived of them; nor does it appear that any other property of the plaintiff will be taken by the contemplated grading of the streets. With respect to the plaintiff’s road and right of way on either side of the streets, the most that can be claimed for it is, that the plaintiff is the owner of property abutting on the streets, and, like other abutting owners, has an easement in the streets, appendant to its property. If so, its rights are not different from ■ those of other proprietors whose property abuts upon the streets. The rights of such owners are well defined. Since the case of Crawford v. Delaware, 7 Ohio St., 460, it has been the settled law of this state, that the owner of an unimproved lot, or of unimproved land abutting upon a street, is not entitled to compensation or damages from the municipality for grading the street, because he is presumed to have acquired his property subject to the right to make all reasonable and proper improvements *303 of the street; nor, where he improves his lot or land before the grade of the street has been established, is he entitled to compensation or damages for a subsequent reasonable and proper grading of the street, unless he used due care to make his improvement with reference to the establishment of such a grade; but, when his improvement has been made in accordance with an established grade which is afterward changed, he is entitled to compensation for the injury resulting therefrom. Railwy v. Cumminsville, 14 Ohio St., 523; Cincinnati v. Penny, 21 Ohio St., 499; Youngstown v. Moore, 30 Ohio St., 133. In addition to the fact, that when the plaintiff’s railroad was originally constructed across what are now known as Ralston avenue, and North Clinton street, they were, at the places of crossing, county roads outside of the corporate boundaries of the defendant, the record discloses that no grade of either had been established, nor was any building erected or other improvement made on the plaintiff’s property, on either side of either of those roads, nor was any constructed thereon before the passage of the ordinance of December 20, 1887; and none has been since that time; but the property of the plaintiff has remained, and still is in the same condition, in these respects, that it was when the crossings were first made; so that, conceding1 the ordinance, and the construction of the bridges under it, had the effect, so far as the plaintiff’s rights are concerned, of establishing the grades of those streets at the places of their intersection with the railroad, in accordance with the location of the bridges, it cannot be claimed, and is not, as we understand, that plaintiff improved its property with reference to such grade, or any established *304 grade, or made any change in its condition on account of the ordinance, except to build the bridges and approaches. But, however that may be, to whatever extent the plaintiff’s property will be taken, or its rights invaded, or injury be sustained by the making of the contemplated grade, for which the plaintiff may lawfully claim compensation, ample provision is made by the law under which the proceeding was instituted, whereby the plaintiff might have had full compensation and damages assessed in the mode required by the constitution. It is shown by the allegations of the answer not denied by the reply, and therefore admitted, that the council of the defendant, in conformity with section 2304, of the Revised Statutes, duly declared, by resolution, the necessity of the proposed improvement, and gave the plaintiff the requisite twenty days written notice of its passage, and published the resolution for the leng-th of time, and in the manner required by that section; and, it is further shown that the plaintiff filed no claim whatever for compensation or damages. Section 2315, makes it necessary for persons who claim they “will sustain damages by reason of the improvement,” to file their claim therefor, with the clerk of the corporation, within two weeks ‘ ‘after the service, or completion of the publication of the notice mentioned in section 2304,” and contains the further provision, that persons who fail to so file their claim “shall be .deemed to have waived the same, and shall be, barred from filing a claim or receiving damages.” The statute then provides that, at the expiration of the time limited for filing claims for damages, the council shall determine whether it will proceed with the improvement or not; also, whether the *305 claims for damages filed shall be judicially inquired into before commencing the improvement, or after its completion. Section 2316. And when the council determine to go on with the improvement, provision is made for impanelling a jury either in the court of common pleas, or probate court, to inquire into, and assess the' damages, either before the improvement is commenced, or after its completion, as the council may determine; but such inquiry and assessment shall be confined to the claims which have been filed as above stated. Sections 2317, 2318. These statutes have been in force and acted upon for many years, and we are not aware their constitutionality has been called in question. Similar provisions in the county and township road laws, in regard to the waiver of the right to compensation for property taken, by failure of the owner to file his claim in writing with the viewers, have been held constitutional by this court. Reckner v. Warner, 22 Ohio St., 275; Anderson v. McKinney, 24 Ohio St., 467; Frevert v. Finfrock, 31 Ohio St., 621. The principle of the cases cited, is applicable to the street improvement statutes we have referred to, and under them the plaintiff’s claim to compensation, if any it had, was waived and barred by the failure to file it within the time required. The plaintiff is charged with the knowledge of the law, and, in the absence of any showing to the contrary, must be presumed to have voluntarily withheld its claim for compensation and damag’es, and thus prevented an inquiry into, and assessment of them; and it seems clear, that an owner who has been afforded an opportunity of having compensation and damages assessed him, in the constitutional mode, for property taken or injured in the *306 making of a street improvement, and has failed to avail himself of that opportunity, cannot, after having thus waived his right, enjoin the improvement on the ground that compensation has not been paid or tendered him.
3. After the adoption, by the defendant, of the ordinance of December 20, 1887, the receiver then having charge of the railroad now owned by the plaintiff, constructed the bridges over the railway track where it crosses the streets named in the ordinance, in. accordance with its requirements, whereby, it is claimed, a contract arose between the defendant and receiver, the benefits and burdens of which have passed to the plaintiff, under which the plaintiff is entitled to perpetually maintain, and have maintained, the bridges and crossings in the situation and condition they were placed in when the bridges were so constructed. The making’ of the grades of the streets in conformity with the ordinances of February 7, 1893, will necessitate the removal of the bridges, and the substitution of grade, for what are now overhead crossings, which, the plaintiff contends, will be a breach of the contract, causing- it irreparable injury, that should be prevented by injunction. Ordinarily a threatened violation of a contract is not a ground for injunction; but without stopping to discuss the propriety of the remedy adopted for the apprehended injury, and assuming- no action at law would be adequate for its redress, if the right were established, we proceed to inquire into the existence of the alleged contract, and its scope and effect, if it be found that one arose under the ordinance. It seems well settled, that the legislative and administrative powers with which municipal corporations are invested, are *307 held by them in trust, for public purposes, and cannot be relinquished, or their exercise surrendered, or ceded away, except when, and to the extent, legislative authority, is clearly given to do so. Such powers are essential to the preservation and well being of populous communities, and without them the purposes of the corporation would fail of accomplishment. These powers, among which are those pertaining to the opening, improving, and keeping in repair the streets and highways of the municipalities, are necessarily continuing in their nature, to be exercised from time to time as the public interest may require; and it would be incompatible with their essential purpose to permit the officers of the municipal body, by agreement or otherwise, to prevent or defeat their proper exercise, either by themselves or their successors, at any time when the public occasion may call for their exercise. Any attempt to do so must be ineffectual, unless clearly authorized by the charter, or laws governing the municipal corporation. And, not only is authority of that nature essential to the validity of such an act, but every grant in derogation of the right of the public in the free and unobstructed use of the streets, or restrictive of the control of the proper ag’encies of the municipal body over them, or of the legitimate exercise of their, powers in the public interest, will be construed strictly ag-ainst the grantee, and liberally in favor of the public; nothing will be implied beyond the express terms of the grant, not indispensable to give effect to the grant. That such is the law, counsel for plaintiff do not deny; but they insist that express legislative authority to make the grant on *308 which they rely, is found in section 3283, of the Revised Statutes, which reads as follows:
“If it be necessary in the location of any part of a railroad to occupy any public road, street, alley, way or ground of any kind, or any part thereof, the municipal or other corporation, or public officers or authorities, .owning or having-charge thereof, and the company may agree upon the manner, terms and conditions upon which the same may be used or occupied; and if the parties be unable to agree thereon, and it be necessary, in the judgment of the directors of such company, to use such road, street, alley, way or ground, such company may appropriate so much of the same as may be necessary for the purposes of its road in the manner and upon the same terms as is provided for the appropriation of the property of individuals; but every company which lays a track upon any such street, alley, road or ground shall be responsible for injuries done thereby to private or public property lying upon or near to such ground, which may be recovered by civil action brought by the owner, before the proper court, at any time within two years from the completion of such track.”
It may be observed, that the extent of the authority conferred by this statute, on municipal corporations, is to agree with railroad companies upon the manner, terms and conditions upon which a street, etc., may be used and occupied by a railroad, “if it be necessary in the location” of the railroad, for any part of it to occupy such street, etc.; and then, they may agree for the use of so much of the street only as is necessary for the purposes of the railroad. This limitation is manifest from the provision, that if the parties are *309 unable to agree, the company may appropriate so much of the street as is necessary for the purposes of its road. The object of the appropriation is to acquire such use of the street, etc., as could have been granted by agreement; and no greater use can be obtained in the one mode, than in the other; the right acquired in either, is limited to the use of so much of the street as may be necessary for the purposes “of the railroad.” The statute, we think, does not contemplate the destruction of the street, or the cessation of its use by the public, or its withdrawal from the control and supervision of the propei* municipal officers; nor is authority found in it for any agreement having such results. On the contrary, the statute recognizes the street so burdened with a railroad, as a “public street,” with all that term imports. By the next section (3284), whenever, in the construction of a railroad, a public road is crossed or diverted from its location, the company is required without unnecessary delay, to place the road ‘ ‘ in such condition as not to impair its former usefulness.” As we have seen, when the railway now owned by the plaintiff was constructed, the two streets in question were public roads; and, it is alleged in the petition, that the company which built the railroad, in compliance with its duty under the above statute, which was then in force, erected bridges over its track, and made the approaches to them, in order to restore the roads to their former usefulness for public travel. That the bridges and approaches became parts of the public roads, and continued to be so, under the control of the county commissioners, down to the time they were taken into the corporate limits of 'the defendant, is beyond question; and they were undoubtedly parts of the public streets *310 of the defendant, under its supervision and control, when the ordinance of December 20,1887, was passed. That ordinance, in terms, grants to the railroad company permission to put new bridges of a specified description where the old ones then were, place them three feet higher above the railroad track, and raise the approaches accordingly; it does nothing more. It is plain that the grant, neither in terms nor by necessary implication, divests the defendant of its control over the streets, nor relieves it of its duty to keep them open, in repair, and free from nuisance ; nor, does it purport to obligate the defendant to abstain from the lawful exercise of its powers to make further improvements of the streets as the public interest may from time to time demand. The obvious purpose in granting the permission to put up the new bridges, was to preserve and promote the free and unobstructed use of the streets by the public, and not to destroy them as public thoroughfares, or invest the railroad company with an interest in, or control over them, nor to enable the company forever and unalterably to maintain the bridges as put up. True, the ordinance imposes the burden upon the company “at all times” to keep the bridges and approaches in repair, but that must mean, at all times while the proper performance of the defendant’s statutory duties with respect to the streets permits them to remain; and when removed in consequence of an improvement of the street, the company will, of course be relieved of the burden. It is not apparent that the expenditure of money and labor in the construction of the bridges, as a condition or consideration for the privilege of placing them in the street, can give rise to any legal right or conse *311 quence different from what would result from the like expenditure in putting a street, where a railroad crosses it at grade, in a condition to preserve its usefulness as such; and it would hardly he claimed in the latter case, that the municipality having jurisdiction over the street, would he disabled from so improving- it as to necessitate an overhead, instead of a grade crossing, notwithstanding it had previously authorized the grade crossing- to be made, or to be raised or lowered after it was made. In either case, the public use continues to be the dominant interest in the street, and the crossing subject to such changes, necessary to subserve that interest, as the proper officers of the municipality may choose to make, in the exercise of their statutory powers, which do not defeat those uses of the crossing by the railroad company that are necessary in the prosecution of its business. We are aware the petition of the plaintiff alleges that overhead crossings, substantially as they now exist over its track in these streets, are absolutely essential to the safe use of the railroad in those places. But this allegation is denied by the answer, and the issue of fact was found against the plaintiff by the court below. We are not required to examine the evidence to ascem tain whether it sustains the findings, but it is apparent the most that can be said in support of this claim of the plaintiff is, that the contemplated grade crossings may require greater care on its part in operating its road, as it also may on the part of the persons using them, and thus subject it to some inconveniences, and if negligent, to losses. It is well known, however, that very many railroad crossing’s are of that kind, and roads are extensively operated over them in numerous instances, *312 in populous cities where great numbers of trains, people, and vehicles pass daily, and have been since the use of railroads began; and the inconveniences to which plaintiff may be subjected on account of the change in the character of the crossing’s, cannot deprive the defendant of its right, or absolve it from its duty to cause needed improvements of the streets to be made. Middlesex Railroad Co. v. Wakefield, 103 Mass., 263; C., B. & Q. R. R. Co. v. Quincy, 136 Ill., 563. The comparative safety of overhead and grade crossings, and the increased dangers which would arise from the making of the changes provided for by the ordinances, were important matters for the consideration of the members of the council in determining whether the ordinances should be adopted; and it must be presumed they received full and fair consideration, and candid decision. Recent tendency is undoubtedly in the direction of abolishing grade crossings, as far as practicable, and that tendency deserves encouragement; but, that they must continue to be used, in many, if not most instances, is quite probable, and in some instances are the only practicable and available kind of crossing’. In behalf of the action of the defendant in this case, it is claimed that the elevation made in the streets by the increased height of the bridges, renders travel, and traffic with loaded vehicles, over them so difficult that they constitute substantial obstructions of the streets, which, together with the growth in population of the defendant and the surrounding vicinity, require the changes proposed by the ordinances, in order to meet the present public necessities in the uses of the streets. The relative public benefits and private disadvantages that might result, called for the best judgment of the *313 members of the council, and their decision, when not transcending their powers, or induced by fraud, is beyond the control of the courts. The proper interpretation of our statutes, requires us to hold, that the defendant was without authority to yield the control of the streets, by ordinance, or otherwise, to the railroad company, or relinquish or restrict any of its powers with respect to the improvement of them, or discharge itself from any of its statutory duties concerning them. But aside from the want of authority to accomplish that result, we are convinced the ordinance of December 20, 1887, has not the operation claimed for it by the plaintiff. The agreement, if one arose from its acceptance, was not one made “in the location” of the railroad in the defendant’s streets, as to “the manner, terms, and conditions upon which the same might be used or occupied” by the railroad, for it had long before that been located and constructed, and still remains unchanged, and unmolested as originally located and constructed; nor, can it be regarded as an agreement upon terms, etc., for the right of further occupancy and use of the streets, because that was unnecessary, the right existing in virtue of the original construction of the road; nor, what is more important, does the ordinance relate to the use or occupancy of the streets by the railroad, but rather to the keeping of the streets in a condition to preserve their usefulness as public thoroughfares. The agreement, therefore, is not within the purview of section 3283, but is more appropriately referable to the succeeding section (3284), which requires a railroad company whose road crosses a public highway to put the latter in a condition that it will not impair its usefulness as *314 such. This provision, it seems, is substantially the common law rule on the subject, which, it. is held, imposes the duty upon a railroad company constructing its road across a public hig’hway, to restore, or reunite the highway at its own expense, by reasonably safe and convenient means of passage, although the charter, or statute authorizing the construction of the railroad contains no express provision to that effect; and the duty so imposed, it is held, has reference to future contingencies, and requires the company, from time to time, to put the highway in such condition.as changed circumstances may render necessary. State v. Railway Co., 35 Minn., 131.
Again, when the ordinance was passed, those statutory provisions were in force which invest the legislative bodies of municipal corporations with the entire control of the streets, and confer upon them power to make improvements thereof from time to time in the public interest, by grading, etc.; and persons and corporations contracting with the municipal authorities, must be presumed to contract with reference to the obligations and duties arising under those laws, and subject to the consequences resulting from their operation and enforcement. Impliedly, they enter into and become a part of such contracts, as much so as if embodied therein, and such is the presumed intention of the parties. "When, therefore, those laws are put in operation, it cannot be said that the obligation of the contract is impaired, but rather that full effect is given to the contract according to its true scope and intent. Smith v. Parsons, 1 Ohio, 236; Weil v. State, 46 Ohio St., 450. “The obligation of a contract,” says Judge Cooley, in his work on Constitutional Limitations, page 345, “depends on the *315 laws in existence when it was made; these are necessarily referred to in all contracts, and forming a part of them as the measure of the obligation to perform them by one party, and the right acquired by the other.” And in the application of the rule, to a ease analogous to the one before us, it is said by the Supreme Court of Illinois, in the opinion by Scholfleld, C. J.: “It can not be said that the right of the railroad company granted by the deed of the city is impaired by this improvement, for the reason that the grant is subject, by implication, to the exercise of this power by the city, for such grants are construed- strictly as against the railroad company and liberally in favor of the •public, and nothing- can therefore be implied in favor of the grantee, beyond the express letter of the grant, unless it shall be indispensable to give effect to the grant, (Railroad Co. v. Chicago, 121 Ill., 176; Railroad Co. v. City of Belleville, 122 Ill., 376, 12 N. E. R., 680), and it is not indispensable to give effect to this grant that the city shall have no right to improve the parts of the street on which appellant’s tracks are laid. The fact that the railroad company agreed to so grade the streets and so lay the railroad tracks that carriages, wagons, etc., may conveniently cross the same, does not deprive the city of the power, nor absolve it from the duty, to keep the street in a safe and proper condition. ” C., B. & Q. R. R. Co. v. Quincy; 139 Ill., 355.
In our opinion, the ordinance of December 20, 1887, constitutes no valid objection to the improvements which the council of the defendant, by the ordinances of February 7,1893, ordered to be made. It is suggested this conclusion is in conflict with the cases of the Railway Company v. Carthage, 36 *316 Ohio St., 631, and the Phiia. W. & B. R. Co.’s Appeal, 121 Pa. St., 44. But we think not. In the first of those cases the contract was made at the time of the location of the railroad, and was an agreement in regard to the terms on which the railroad might occupy the streets of the village, and ‘was, therefore, strictly within section 3283, of the Revised Statutes; and, it is especially to be noticed, that under such an agreement, the power of the municipal authorities to improve the streets, notwithstanding the location of the railroad in them, while not involved in the action, is recognized by the court in the opinion.
In the Pennsylvania case, the city of Chester, under a special act of the legislature authorizing it to do so, entered into a contract with the railroad company to establish the grade of a ■ street about to be opened, eighteen feet above the railroad track, and the company agreed to construct a bridge over the track. The act declared that the contract when made, should be as valid and effectual to transfer the rights and privileges therein contracted for to the railroad company, as if made between individuals; and it further authorized the company to maintain its bridge so long as the street remained open. In the decision of the case, stress -is placed on these provisions, the first of which put the contract on the same footing as ag’reements between individuals, and took it out of that general rule applicable to agreements of municipal bodies which leaves them at liberty to exercise their legislative powers whenever necessary for public purposes, and the latter expressly fixed the duration of the contract, which, having been made in execution of the power conferred by the statute, was intended to be as comprehensive as *317 the statute permitted. Both eases are essentially different from the one before us.
4. A question is made on the competency of testimony offered by the plaintiff, which the court excluded, consisting, first, of the opinions of witnesses in regard to the dangers which would, or might ensue in operating the railroad, if the ordinances of February 7, 1893, should be carried into effect; and second, the oral discussions of members of the defendant’s council, while the ordinances were under consideration by that body. As an example of the first, an expert engineer, who had fully testified to the condition of the crossing, and all the circumstances of their situations and surroundings, was asked, “what would be the effect upon the business of the company, and its relations to the public, if the ordinances of 1893 were carried into effect?” We think the opinion called for by the question is somewhat beyond the range of expert testimony. This witness, and others were also asked to give an opinion as to whether the crossings could be made safe for the public and railroad employes, if the grades were made as the ordinances required; and other questions were put, varying in form, to obtain opinions on the same subject. The trial was to the court, and the extent to which such testimony should be received and considered, was largely in its discretion. We must assume the court gave due consideration to the facts proven, and the opinions of witnesses might, or not, aid the court in arriving at a correct decision upon the issues of the case. The average individual possessed of all the facts, would be competent to form a conclusion in regard to the dangers of the crossings, unaided by the opinions of persons experienced in operating rail *318 roads. The exclusion of this testimony, and of the arguments advanced by members of the council for or against the passage of the ordinances, is not of sufficient consequence to require the reversal of the judgment. If competent, and we do not say it was, it is not apparent that the plaintiff was prejudiced by its exclusion. The final action of the council in the adoption of the ordinances, gave them their validity; and the vote on their adoption was the exercise, by the members of that body, of their deliberate judgment, after all the consideration they had given the subject. Of the necessity or expediency of the improvements thereby directed to be made, they were the sole judges, and in the absence of fraud, their determination upon those questions cannot be judicially revised. Dillon on Mun. Cor., sections 94, 95, 686; Beach on Pub. Corp., sections 1205, 1112, 1118.
The petition of the plaintiff contains a charge of fraud, but that having been put in issue, appears to have been abandoned at the trial, as no evidence was offered to sustain it, and the trial court found against it; and the making of improvements, of the nature provided for by the ordinances, was, as we have seen, within the statutory powers of the council. After a careful examination, we have discovered no error in the record, which warrants the reversal of the judgment below.

Judgment affirmed.