THE INHABITANTS OF THE CITY OF BURLINGTON

v.

THE PENNSYLVANIA RAILROAD COMPANY.

[Filed November 19th, 1897.]

1. Without statutory authority, expressly given or arising from necessary implication, a railroad placed longitudinally in a street is a nuisance.

2. A municipal government invested with the ordinary power to regulate streets is a trustee for the public, and its control over the streets is restricted to acts in furtherance of the rights of the public in them.

3. The charter of a railway company which authorizes it to lay its tracks between certain termini involves no necessity of running longitudinally along a street.

4. The legislature has the right to discriminate and enact (*P. L. of 1896 p. 228*) that railway tracks may be laid on streets in smaller cities if the municipal authorities deem it safe to grant such permission, while in more populated cities tracks shall be laid only by direct authority of the legislature.

5. *P. L. of 1896 p. 228*, which authorizes cities, except of the first class, to enter into contracts with railway companies whose roads now enter or lie within their limits, or whose routes have been located therein, and ratifies such contracts, but provides that no such track shall hereafter be laid unless the right of the abutting owners shall be acquired, is unconstitutional, as being special in the regulation of the internal affairs of municipalities.

6. And such act is also unconstitutional as conferring special privileges upon one class of corporations only.

Heard on bill and answer.

*Mr. Howard Flanders* and *Mr. Samuel W. Beldon,* for the complainants.

*Mr. Joseph H. Gaskill* and *Mr. Samuel H. Grey,* for the defendant.

REED, V. C.

This bill is filed by the inhabitants of the city of Burlington to restrain the Pennsylvania Railroad Company from laying an additional track through Broad street in said city, and to compel the defendant to remove such portion of said track as is laid in said street. The Camden and Amboy Railroad Company laid its route through, and built a single track upon, this street in 1832 and 1833. The mayor, recorder, aldermen and commonalty of the city of Burlington granted to the company the right to construct the railroad authorized by the act incorporating the railroad company, upon, through and along Broad street, in the said city of Burlington, from the eastern to the western extremity of the city; and the city covenanted that it should be lawful for the company, their officers, engineers, agents and workmen, to enter upon said street and grade the same, and lay rails thereon, and to do any other acts and things necessary to be done for the proper and effectual completion of said road, and for the keeping of the same in repair, doing no unnecessary damage or injury either to the said street or property adjacent thereto. But it was agreed that the road should be constructed, as nearly as may be, in the middle of Broad street, or so nearly so as to leave an ample and sufficient carriageway along said street on each side of said railway. The query is whether this municipal consent is sufficient to legalize the existing and proposed structure within the street.

It is entirely settled that without statutory authority expressly given or arising from necessary implication, a railroad placed longitudinally in a street is a nuisance.

A railroad so placed is regarded as practically an exclusive appropriation of that part of the street which it occupies to a use inconsistent with the legitimate use of the street by the public.

Its presence in the street is as repugnant to the rights of the public as would be the presence of a church or a market-house or any other structure devoted to private objects. *New Jersey Southern Railroad Co.* v. *Long Branch Commissioners, 10 Vr. 28, 33; Citizens' Coach Co.* v. *Camden Horse Railroad Co., 6 Stew. Eq. 267.*

A municipal government, invested with the ordinary power to regulate streets, is a trustee for the public. Its control over streets is restricted to acts in furtherance to the rights of the public in them. *Trustees of M. E. Church* v. *Council of Hoboken, 4 Vr. 14, 19*

It is of course true that the public right, so far as it is concerned, is subject to the legislative control over streets. As to the public, the legislature can authorize the abandonment of a street *in toto*, or turn it in part over to a private enterprise. It may, therefore, legalize the operation of a steam railroad transversely or longitudinally over or along a highway. The legislative authority, however, must appear either in express terms or must flow as a necessary implication from powers expressly granted. *State* v. *Warren Railroad Co., 5 Dutch. 353; Newark* v. *Delaware, Lackawanna and Western Railroad Co., 15 Stew. Eq. 196; Hoboken Land and Improvement Co.* v. *Hoboken, 6 Vr. 205.* The grant of power may be made directly by the legislature or it may be delegated to the government of a municipality. It may be contained in the charter of a city, in the charter of a railroad or in a general statute.

No such delegation of a grant of power to the municipal government is to be found in the charter of the city of Burlington in existence at the time of the execution of the consent named. The city was empowered to make by-laws and ordinances relative to the laying out and regulating of streets and highways. The generality of this grant contains no authorization which empowered the city to turn over a street to purposes inconsistent with its use as a highway.

Nor is any such power observable in the charter of the Camden and Amboy Railroad Company. The company was empowered to lay its tracks between certain termini, which involved

the necessary implication of a power to cross highways that lay between the terminal points. But it involved no necessity of running longitudinally along a road or street. *Dill. Mun. Corp.* § *707*.

No legislative authority in support of the consent granted by the municipality exists unless it be found in the act passed in 1896. *P. L. of 1896 p. 228.* This act provides that any city, except cities of the first class, are authorized and empowered to enter into contracts with any of the railroad companies whose roads now enter or lie within their cities respectively, or whose routes have been located thereon, and granting to said railroad companies or any of them the right to lay their road and construct their tracks in, through, along or upon any of the roads or streets of the said cities, upon such terms, &c., and any such contracts heretofore or hereafter made by said cities or any of them with any railroad company or companies as aforesaid are hereby fully authorized, ratified and confirmed; provided, that hereafter no road shall be laid or track constructed in, through or upon any of the said roads or streets, other than such as have been authorized by any such contract hereinbefore made, until said railroad company shall have acquired the right of the abutting owners on said road or street, either by agreement, purchase or condemnation.

It is perceived that the statute confers powers upon certain cities to grant powers to certain railroads to lay their tracks in the public streets of such cities. The counsel for the city of Burlington propounded the query whether the act is not one regulative of the internal affairs of cities, and if so, whether it conformed to the constitutional requirements of generality in its operations. That it regulates the internal affairs of cities is too obvious for argument. It confers power upon cities to grant licenses to railroad companies to use the streets of a city, which is a matter of strictly municipal concern.

The important question is whether the legislation is special. The exclusion of cities of the first class may be vindicated on the ground that population, having regard to the purposes of legislation, may be a proper basis of classification. The

Burlington v. Pennsylvania R. R. Co.

streets of a large city, it may be assumed, are so much more completely used for other purposes, that the presence of a railroad within their limits would be more likely to interfere with traffic and endanger life than if such a road were placed in the streets of a city of less population. The legislature would have the right to discriminate and enact that in the latter cities such a track may be laid if the municipal authorities deem it safe to grant such permission, while in the more populous cities tracks should not be laid at all, or if laid, only laid with the direct authority of the legislature. Therefore, I think, the criticism of the act upon this ground is untenable.

But the other ground upon which the statute is attacked possesses more substance. It is perceived that the power to enter into contracts with railroad companies upon which the municipality grants the right to construct tracks along streets of cities is limited by the statute to cities within which railroads were already constructed or a route was already located at the time of the passage of the statute. The effect of the legislation is to exclude from participation in the power conferred any city in which a railroad route shall be located after the passage of the act. Now it is impossible to conceive how a city in which a route may have been filed after April 9th differs from a city in which a route was filed before April 9th, in respect to the condition which called for the legislation. The propriety or necessity for the existence of the power to contract would be exactly the same whether the route has been or shall be filed. The legislature cannot confine the force of its enactment to the condition of affairs existing at the date of the act if similar conditions are likely to arise thereafter. It is upon this ground that statutes which apply to cities having at the time of the approval of the act a certain population have been adjudged "special" in failing to include cities which may grow into the class. *Pavonia Horse Railroad Co.* v. *Jersey City, 16 Vr. 298;* *Coutieri* v. *New Brunswick, 15 Vr. 58.*

The legislature could, with as much propriety, have fixed any other date, either before or after the approval of the act, and provided that the provisions of the statute should apply to

those cities in which routes were filed before, and not apply to those cities in which routes were filed or will be filed after the said date.

Not only does the act operate specially in respect to the matter already mentioned, but it grants exclusive privileges to certain corporations. A railroad company which had filed its route before April 9th, 1896, is permitted to obtain municipal consent to its occupation of city streets, while those companies who shall have filed their route since that date are still deprived of this privilege. The principle underlying the point now mooted will be found applied in the exhaustive opinion of Mr. Justice Lippincott, delivered in the case of *Alexander* v. *City of Elizabeth*, *27 Vr. 71*. In that case the act under consideration was one in which the legislature empowered a municipality to license the owners of race-courses and to maintain the courses for running and trotting horses. The act applied only to those in use prior to January 1st, 1893. Race-tracks that sprang into use subsequent to that date were excluded from the privilege of receiving a license. This act was held "special" not only in its regulation of the internal affairs of municipalities, but also as conferring special privileges upon one class of corporations. Upon both these grounds I regard the present act as special and unconstitutional. This leaves it unnecessary to discuss the validity of the proviso which distinguishes between roads which have been authorized by a contract made before the passage of the act and roads authorized by contracts made after the passage of the statute, in respect to acquiring the rights of abutting owners.

The conclusion, therefore, is that there is no legislative authority to legalize the presence of the railroad track within Broad street.

I will advise a decree for an injunction restraining the construction of the additional track, and so far as the additional track has been partially laid within the limits of the street, I will advise a mandatory injunction for its removal.