[Sac. No. 2275.   Department Two.—December 12, 1916.]

## CITY OF SACRAMENTO (a Municipal Corporation), Respondent, v. PACIFIC GAS AND ELECTRIC COMPANY (a Corporation), Appellant.

HIGHWAYS—OBSTRUCTION—CONVENIENCE—INSUFFICIENT JUSTIFICATION. No argument of convenience nor even of necessity justifies an unauthorized obstruction on or unauthorized interference with the free use by the public of one of its highways, and all such arguments are to be addressed to the law-making power.

ID.—STREET RAILROAD CORPORATIONS—CONSTRUCTION OF FRANCHISES—UNAUTHORIZED CONNECTION OF BRANCHES.—Where a franchise is granted by a municipal corporation to one street railroad corporation to construct its tracks east on K Street and south on Tenth Street, and to a different corporation the right to construct its tracks west on K Street and north on Tenth Street, the corporation which thereafter acquired both franchises had not the right to construct a straight track across K Street connecting the two branches on Tenth Street, although both franchises included the power to build "all necessary or convenient tracks for curves, turnouts, switches, sidetracks, stations, turntables and appendages," and it would be much more expedient for the corporation and much more convenient for the traveling public to have the direct crossing.

ID.—FRANCHISE FOR STREET RAILROAD—CONSTRUCTION.—A grant of a franchise to construct and operate a railroad or other utility in the street is to be strictly construed, and, in cases of a fair doubt, in favor of the public as against those claiming under the grant.

APPEAL from a judgment of the Superior Court of Sacramento County, and from an order denying a new trial.   N. D. Arnot, Judge presiding.

The facts are stated in the opinion of the court.

Wm. B. Bosley, Thos. J. Straub, and L. T. Hatfield, for Appellant.

Archibald Yell, R. T. McKisick, and V. A. McGeorge, for Respondent.

HENSHAW, J.—The appellant, operating an electric street railway in the city of Sacramento, undertook to construct across K Street in that city two tracks, directly connecting its

existing tracks on Tenth Street, which extended north and south from K Street. The accompanying diagram will facilitate an understanding of the situation:

K Street extends east and west and upon it, across Tenth Street, defendant has for many years operated its railway. Approaching Tenth Street along K from the west there is at Tenth Street a curve to the right and southerly, whereby cars on K Street may be and are diverted to Tenth Street and run southerly thereon. As defendant's street-cars reach Tenth Street on K from the east, similar curves bear off to the right hand and northerly, whereby the K Street cars are diverted on to Tenth Street north of K Street. These street-car tracks are indicated upon the diagram in solid black lines, a single line in each instance for convenience in delineation, representing two tracks. Over the right of defendant to maintain these tracks there is no controversy. Defendant undertook to make a direct connection across K Street for its lines on Tenth Street. That portion of the new track which it designed to build and was in process of building to accomplish this direct connection is indicated by the dotted lines. This work was arrested by this action in injunction brought by the city of Sacramento. It prevailed, and defendant has taken this appeal. Appellant insists that it has the legal right to construct this disputed portion of the track. It repudiates the suggestion that its argument is more one of convenience than of right, but it is undoubtedly true that running through its argument, like an accompaniment to a theme, is the contention adverted to. Thus it is said that appellant can and does transfer its cars from

north Tenth Street to south Tenth Street or *vice versa* by the cumbrous method of running them on to K Street, backing them across K Street to the curve upon the other side of the street, and then turning them down that street; that the intersection of Tenth and K Streets is a busy and populous center of traffic, and that it would be much more expedient for the appellant, much more convenient for the traveling public, and a much more expeditious way of clearing the interruption to travel occasioned by the presence of these cars to permit the direct crossing.   However, as it is only in this inferential way that appellant advances the argument of convenience, it is sufficient to say that so far as any such use of a public street is concerned, the only reasoning to which a court can listen is reasoning based on legal right.   No argument of convenience nor even of necessity justifies an unauthorized obstruction on or unauthorized interference with the free use by the public of one of its highways, and all such arguments are to be addressed to the law-making power.   (*Omnibus R. R. Co.* v. *Baldwin,* 57 Cal. 160; *Amestoy* v. *Electric Rapid T. Co.,* 95 Cal. 311, [30 Pac. 550]; *City Store* v. *San Jose etc. R. Co.,* 150 Cal. 277, [88 Pac. 977]; *Davis* v. *Mayor of New York,* 14 N. Y. 506, [67 Am. Dec. 186]; *Commonwealth* v. *Vermont & M. R. Corp.,* 4 Gray (70 Mass.), 22; *Louisville & N. R. Co.* v. *Mobile etc. R. Co.,* 124 Ala. 162, [26 South. 895]; *Burlington* v. *Pennsylvania R. Co.,* 56 N. J. Eq. 259, [38 Atl. 849]; *Fanning* v. *Osborne,* 102 N. Y. 441, [7 N. E. 307]; *Bangor* v. *Bay City Traction etc. Co.,* 147 Mich. 165, 169, [118 Am. St. Rep. 546, 11 Ann. Cas. 293, 7 L. R. A. (N. S.) 1187, 110 N. W. 490]; *Edmonds* v. *Baltimore & Potomac R. Co.,* 114 U. S. 453, [29 L. Ed. 216, 5 Sup. Ct. Rep. 1098]; Joyce on Nuisances, sec. 246; Dillon on Municipal Corporations, 5th ed., sec. 1244; Elliott on Roads and Streets, sec. 1046.)

We come, then, to a consideration of the asserted right of the defendant to lay the tracks in question.   It is said that this right exists by virtue of a grant contained in two ordinances of the city.   By the first of these the predecessors in interest of appellant were empowered to construct the existing double track street-car line which extends along K Street, across Tenth and thereon easterly.   They were also empowered to build and operate the existing line from Tenth and K connecting with the existing line on K, thence at Tenth Street southerly along Tenth Street, and in connection with the con-

struction and operation of this system were empowered to build "all necessary or convenient tracks for curves, turnouts, switches, sidetracks, stations, turntables and appendages."

By the second ordinance the predecessor in interest of appellant was authorized to operate electric cars on K Street westerly "to a connection with the tracks of the Central Electric Railway Company at the intersection of K Street and Tenth Street, thence on Tenth Street to a connection with the tracks of the Central Electric Railway Company on J. Street," etc. This is the connection indicated upon the diagram by the northerly curve. The franchise grants contained in these ordinances, it is to be noted, were grants not to the same but to different persons or corporations. The power conferred by them was exercised to the extent indicated in the construction of the curves leading into the tracks to the north and south on Tenth Street. The single question is whether those ordinances, separately or together, granted the right to build the straight track across K Street on Tenth, and the question we think, relieved from the pressure of the argument of convenience, is an extremely simple one which must be answered in the negative. Clearly, by none of the language used in either ordinance is the right and power to do this thing directly declared and granted. Appellant finds that power in the use of the word "appendages." That word is employed in the second ordinance in precisely the same manner as it is used in the first ordinance where its context is quoted. Appellant argues that since it can in fact transport its cars on Tenth Street to the north or south of K Street by the cumbrous method of switching, the direct cross-track to accomplish the same results comes justly within the meaning of the word "appendage." But is this so? A reading of the ordinances discloses that they are drawn with particularity. The routes are carefully defined. The franchises which they granted were given to different persons at different times. There is, as has been said, nothing in either of them which specifically authorizes a line of railroad directly across K Street, and yet one would certainly look for such an authorization to be expressly given. Moreover, the circumstances under which the franchises themselves were given are repellent to this suggestion. By the first the cars were authorized to run easterly to K Street and then southerly down Tenth. By the other they were authorized to run westerly on K Street and then northerly on

Tenth. The fact that by subsequent purchase or traffic arrangement the control of these various lines has come into a single hand, of course, cannot operate to modify the terms of the grant. And, finally, if doubt can be entertained upon the proposition, and it is certainly little enough to say that doubt can be entertained, that doubt, under all the authorities and under every principle governing the interpretation of such grants, must be construed in favor of the sovereign—the granting power—whose mandatory the city of Sacramento is. "A grant of a franchise to construct and operate a railroad or other utility in the street is to be strictly construed, and, in cases of a fair doubt, in favor of the public as against those claiming under the grant." (Dillon on Municipal Corporations, 5th ed., sec. 1233.) "The grant to a railway company of a right to occupy a street, whether by ordinance or by charter, must plainly appear. It should not be left to implication from general language which does not clearly show an intent to give the permission." (*Chicago etc. R. R. Co.* v. *Chicago,* 121 Ill. 176, [11 N. E. 907].) And without multiplying quotations upon so well settled a proposition, suffice it to cite *Hannibal & St. Joseph Ry. Co.* v. *Missouri River P. Co.,* 125 U. S. 260, [31 L. Ed. 731, 8 Sup. Ct. Rep. 874]; *Charles River Bridge* v. *Warren Bridge,* 11 Pet. (36 U. S.) 420, [9 L. Ed. 773]; *Strourbridge Canal Co.* v. *Wheeley,* 2 Barn. & Adol. 794, [109 Eng. Reprint, 1336]; *Dubuque etc. R. Co.* v. *Litchfield,* 64 U. S. (23 How.) 66, [16 L. Ed. 500]; *Northwestern Fertilizing Co.* v. *Hyde Park,* 97 U. S. 659, 666, [24 L. Ed. 1036, 1038].

The judgment and order appealed from are therefore affirmed.

Melvin, J., and Lorigan, J., concurred.

Hearing in Bank denied.