# CHARLESTON.

COUNTY COURT OF WYOMING COUNTY v. WHITE *et al.*

Submitted January 17, 1917.   Decided January 30, 1917.

1. TELEGRAPHS AND TELEPHONE—*Removal of Poles—Notice—Statute.*
    It is the duty of a telephone company, occupying a public highway under a franchise from the county court, to remove and reset its poles and lines at its own expense, when notified to do so, if they are so situated as to interfere materially with the work, lawfully prosecuted, of permanently improving such highway. The franchise of such telephone company is subordinate to the rights of the traveling public in the highway. (p. 479).

2. SAME—*Removal of Poles—Mandamus.*
    Although the county court is authorized by statute to remove and reset such telephone poles, and to charge the expense thereof to the owner, it is not obliged to do so, and may demand a writ of mandamus to compel their removal by the owner. (p. 480).

3. SAME—*Poles—Obstruction—Statute.*
    Telephone poles, standing on the right of way in such proximity to the traveled road as to materially interfere with the work of permanently improving it, constitute an obstruction to the use of the public road by the traveling public, within the meaning of Sec. 56a (77), Ch. 43, Barnes' Code. (p. 481).

4. JUDGMENT—*Bar—Removal   of   Telegraph   Poles—Mandamus—
Pending Injunction.*

The pendency of a suit, brought by such telephone company
simply to enjoin the county court and its contractors, engaged in
making permanent highway improvement, from wilfully and wan-
tonly destroying its poles and wires, and the granting of a tem-
porary injunction order, restraining such wilful trespass, is no im-
pediment to the right of the county court to apply for a writ of
mandamus to compel such telephone company to remove its poles
and lines. (p. 481).

Mandamus by County Court of Wyoming County against
Guy White and others.

                    *Peremptory writ ordered.*

*M. F. Matheny, R. D. Bailey, J. Albert Toler* and *E. W.
Worrell,* for petitioner.

*S. D. Stokes* and *R. E. Hughes,* for respondents.

WILLIAMS, JUDGE:

Upon direct application to this court by the County Court
of Wyoming county for a mandamus to compel Guy White
and Ulvert O. Sanders, partners, doing business in the name
of The Wyoming Telephone Company, to remove certain tel-
ephone poles which had been erected on the right of way,
along certain public roads of the county, under a franchise
granted by the said county court, but which now interfere
with the work now in progress of permanently improving
said roads, an alternative writ was issued, to which respond-
ents demurred and also made return. From the pleadings,
exhibits and affidavits the following facts appear:

Under a franchise granted to it by the County Court of
Wyoming county in the year 1905, the Wyoming Telephone
and Development Company erected its telephone lines along
certain public roads in the county. The lines and franchise
have since passed to respondents, who are now operating the
lines as partners, under the name of The Wyoming Telephone
Company.

In August, 1915, the voters of that county voted a bond
issue of $550,000, for the purpose of permanently improving

certain public roads of the county, along some of which the telephone lines had been erected. The bonds were issued and sold and, in April, 1916, the County Court contracted with Henning & Hagerdon, a corporation, for the work of permanently improving the road leading from Mullens to Pineville; and at the same time, with Winston & Company, a corporation, for the improvement of the road between Pineville and Oceana; with John P. and C. P. Keeley, partners doing business as Keeley Brothers, for the improvement of the road from Oceana to Baileysville; and with T. Towles & Company, a corporation, for the permanent improvement of the road from Baileysville to the McDowell county line. The several contractors gave bond and began work of construction. The roads were narrow and led through a virgin forest, along the narrow mountain streams and by overhanging cliffs, and, in order to carry on the work and complete it according to specifications, it becomes necessary to remove a great many telephone poles that stood so near to the edge of the roadbed as to be in the way of blasting rock and shoveling earth necessary to be removed in order to make the road of specified width. Pursuant to orders of the county court, the road engineer notified respondents to remove certain designated poles standing along the road between Pineville and Mullens and between Pineville and Oceana, and that, if they did not remove and reset them, they would be reset at the instance of the road engineer, and the expense thereof charged to respondents, as provided in sec. 79, ch. 43, Code. The notice was not heeded, and the engineer did remove and reset a number of the poles. But many of them yet remain as originally set and materially interfere with the construction work.

Previous to the filing of relator's petition in this court, White and Sanders had filed their bill in the circuit court of Wyoming county against the County Court, which suit was later removed to the circuit court of Mercer county, and procured a temporary injunction, restraining the county court, the road engineer and the contractors "from wilfully and deliberately destroying" plaintiffs' poles and wires, and from molesting or damaging said property "any further than was

necessary on account of said improvement,'' and commanding them to ''remove and reset said poles.'' Although the return purports to exhibit a copy of the injunction order, it is not found among the papers. However, it is admitted the injunction is temporary only. It appears to be reasonably certain that the poles, which the defendants in the injunction suit were commanded to reset, were the ones alleged to have been wilfully cut down by the contractors, and not the poles then standing. That suit has not been disposed of, and is now pending on motion to dissolve the injunction. Pending that motion, the county court has applied to this court for a writ of mandamus to compel respondents to remove their poles and wires, at all places where they interfere with the work of permanent road improvement, now under contract as aforesaid, and especially to remove temporarily the poles designated by marks and numbers and so described in the written notices previously served on respondents, until such time as may be necessary for the contractors to complete their work. The alternative writ avers that, when the work was begun, it became apparent that all of the poles and lines of wire, along almost the entire length of the roads to be permanently improved, would have to be removed temporarily, until the right of way could be cleared of timber and the blasting and excavating necessary to be done was completed.

Respondents seek to justify their refusal to remove their poles and lines on the ground that they do not interfere with public travel on the highway, and that, even if they do interfere with the work of permanently improving the highway, it is, nevertheless, the duty, either of the County Court or the contractors, to remove and reset the poles and restring the wire in a careful manner. From the affidavit of Blake Taylor, the civil engineer employed by the County Court to superintend the work of road construction, it appears that the roads now under contract are the leading thoroughfares of the county; that they follow the creeks, gorges and defiles, through a mountainous country, and for many miles are overhung with virgin forests and cliffs; that, in the work of construction, it is necessary to fell a great deal of timber along the right of way on the steep mountainsides, and to remove

large quantities of stone and earth; that it is physically impossible to do so without injury to, or destruction of respondents' telephone lines in their present location; and that it is necessary the same should be temporarily removed from the right of way, in many places, during the entire time of construction. He further says that, acting under the authority of the county court, he made an oral agreement with Ulvert O. Sanders, one of the respondents, that respondents should go upon the ground, as the work progressed, and take care of their lines; that, although he frequently requested them to do so, they refused to meet affiant upon the ground for that purpose; and that, after their refusal to comply with said oral agreement, affiant, on the 15th day of June, 1916, gave respondents written notice to remove certain poles. He also says the line is old and dilapidated, and that many of the poles are so rotten and worm eaten that, to remove them and restring the wires, would require many new poles, and the constant attention and supervision of experienced linesmen to relocate the line to meet the changing conditions resulting from the continuing work of road construction. This evidence is not contradicted.

One question presented is, upon whom rests the legal duty to remove the telephone poles and wire? Relator is a municipal corporation, a governmental agency, entrusted with the duty of locating, building and maintaining the public highways of the county. Respondents, owners of the telephone lines, are engaged in the public service, and are occupying a portion of the public right of way with their lines, by virtue of a franchise granted, pursuant to legislative authority, by the county court to their predecessors in title. The right of the public in the highway, for the purpose of travel in the ordinary modes, is a primary and fundamental right and is not limited to that portion only of the right of way heretofore traveled. Respondents have a permissive and subordinate right only, which exists only so long as it does not interfere with the primary and superior rights of the traveling public. Such primary right to occupy any and all parts of the right of way for the purpose of a roadway, necessarily implies the right to widen and improve the traveled portion of the road,

whenever it becomes necessary for the better accommodation of the public. This principle was not controverted in the argument. But it was contended that the poles did not interfere with travel in the roadway, and that, being in the way only of the work of improving the highway, it was, therefore, the duty, either of the County Court or of their contractors, to remove them, in a careful manner, at their own expense. This is certainly not the law. Section 56a (77), chapter 43, Barnes' Code, reads as follows:

"It shall be the duty of all telephone, telegraph, electric railway or other electrical companies, to remove and reset, telephone, telegraph, trolley and other poles and the wires connected therewith, when the same constitute obstructions to the use of the public road by the traveling public."

This statute imposes the duty upon a telephone company to remove its poles and wires when they constitute obstructions to the use of the public road, either for travel, or for the purpose of repair. The widening and permanently improving the road, now being done, is for the benefit of the traveling public, and the interference, by the poles and wires, with this work, while not within the letter of the statute, is clearly within its spirit and intendment, and the duty to remove the poles is as imperative upon respondents as if they stood in the old roadbed and did actually hinder travel thereon. It is clearly such an interference as is contemplated by the statute. Interference with the work of improving a highway for better traveling, is necessarily an incidental interference with public travel. It is not shown that the contractors were under any contractual obligation to remove the poles, and the law certainly imposes no such duty as an incident to their undertaking.

It is further insisted that, inasmuch as section 56a (79), same chapter, authorizes the county road engineer to remove and reset poles, in the event the owner refuses to comply with notice, previously given, to do so himself, and to charge the expense thereof to such owner, such is the exclusive remedy in such case. We do not concur in this proposition. Recognizing the supreme importance to the public of keeping the highways free from obstructions, the legislature saw fit to

invest the county court with the authority given by the statute referred to, as a more speedy remedy than any by proceedings in court, but such was clearly not intended to be an exclusive remedy, and it does not deny the remedy by mandamus to compel the owner of the lines to remove the obstructions. The county court is not bound to expend the public revenues in such case and take the risk of the owners' insolvency when it seeks to recover the money thus expended. It may elect its remedy.

Respondents further urge that places where the poles might be reset with safety were not designated, and, therefore, they were excused from not obeying the written notice to reset them. A complete answer to this contention is, they never went upon the ground, or otherwise sought to ascertain where the poles might be safely relocated during the progress of the construction work. Furthermore, the contour of the ground, along the highway, and the nature of the improvements are such as may make it wholly impracticable to relocate the line so that it may not be in the way of felling timber and blasting rock, in many places along the highway. It may, therefore, be necessary for respondents to remove their lines off the right of way entirely, in places, at least temporarily, and until the permanent road improvement is completed. Respondents' duty in this respect is to be determined by the necessity of the case. They must care for their own line. This does not mean that the county court or the contractors have any right to wilfully or wantonly destroy or injure respondents' property. They must use reasonable care not to injure the property any more than is reasonably necessary in the execution of work.

It is further insisted that the county court is estopped to demand a writ of mandamus on account of the pendency of the injunction suit in the circuit court of Mercer county. It does not appear from the pleadings and exhibits in this case that an injunction was applied for, for any other purpose than to restrain the defendants in that suit from wantonly and wilfully cutting down and destroying respondents' poles and wires, nor is it claimed that the injunction granted goes any further than to inhibit the commission of such wilful

trespass. So far as it now appears, the question presented on this application, i. e., whether it is the duty of the county court, or the duty of the owners of the telephone line, to remove and reset the poles, is not involved in that suit. That case apparently rests upon a motion to dissolve a temporary injunction, restraining the commission of a wanton trespass only, and is, therefore, no impediment to this proceeding.

We are of opinion that relator has a clear legal right to demand the removal by respondents of their poles and wires, temporarily, from the right of way wherever they are so located as to interfere with the necessary work of permanent highway improvement, now in progress, and our conclusion is to award the writ.

*Peremptory writ ordered.*