SCRANTON-PASCAGOULA REALTY CO. v. CITY OF PASCAGOULA *et al.*

(Division B. May 5, 1930. Suggestion of Error Overruled June 21, 1930.)

[127 So. 73. No. 28653.]

**E. J. Ford** and **J. I. Ford**, of Pascagoula, for appellant.

**Ford, White, Graham & Gautier**, all of Pascagoula, for appellant.

W. M. Colmer, of Pascagoula, for appellees.

H. B. Everett, of Pascagoula, and **Mize, Mize & Thompson**, of Gulfport, for appellees.

Argued orally by **E. J. Ford** and **Rossie Ford**, for appellant, and by **S. C. Mize**, for appellee.

**Griffith, J.,** delivered the opinion of the court.

Communy avenue in the city of Pascagoula is an undeveloped street fifty feet wide and several thousand feet in length. Its western terminus is at Bayou Pichot, and running thence eastwardly, it crosses Bayou Yazoo at a distance of about one thousand feet from Bayou Pichot. Between these bayous the land rises into a ridge, so that about midway the elevation is some twelve feet above mean gulf level.

Bayou Pichot, at the point where the said street approaches, is of sufficient size and depth to furnish a harbor for large vessels, and it is only about one thousand feet from this point to where the said bayou flows into the Pascagoula river. Bayou Yazoo originally, and in its natural condition, emptied into Lake Yazoo, which in turn had an outlet into the Pascagoula river near the wider waters of the gulf and at a point about one-half mile below the mouth of Bayou Pichot. From Lake Yazoo, the bayou of that name extended in a direction northwardly, but bearing to the northeast, so that it reached into the central portion of the city and drained a large part of the municipal territory.

In 1918 the International Ship Building Company established on the Pascagoula river a large ship building plant which extended from the mouth of said Bayou Pichot down the river to said Lake Yazoo, and, to further accommodate itself in the matter of the immense ground space desired, the ship building company filled up some two thousand feet in length of said Yazoo bayou, from the lake northward, so that the said fill came up almost to said Communy avenue. This work was done without the consent of the city authorities, but at the same time without any active opposition being expressed either by the city or by appellant. In order to give an outlet to said Yazoo bayou, which, as already indicated, was a natural watercourse, the ship building company constructed a culvert, about three feet wide and four feet deep, from

said Yazoo bayou across to Bayou Pichot, in a general direction from east to west, and at a location from fifty to one hundred feet south of said Communy avenue.

After the close of the World War, there was no further necessity for said ship building plant, and it soon thereafter ceased operations and abandoned its grounds. The said culvert placed by said company between said bayous, which has been there now more than ten years, has fallen into serious disrepair, so that, while it still continues in some measure to carry said waters, it no longer conveys, if it ever did, in an adequate manner all the waters of said Yazoo bayou. The result is that, after rainfalls, and especially when the rainfall has been heavy, from the point where the fill made therein by the ship-building plant begins on back to and above Communy avenue, the said Yazoo bayou becomes overflowed with the waters that come from said rainfalls, and there is formed a body of backwater which extends up into the populous part of the city, even to the location of the city schools and one of the churches. The condition has become such that it is imperative that the city take steps to relieve the intolerable situation.

To this end the city has made a contract with appellee contractors to construct a drain or storm sewer or new watercourse in the form of a large concrete culvert seven feet wide and four feet high from said Yazoo bayou westwardly to a point of access to the waters of said Bayou Pichot, the said culvert to extend for its entire length along and under the said Communy avenue. Appellant is the owner of the lands abutting on said avenue on each side of the proposed culvert, and is the original dedicator of the said avenue; and as such abutting owner and dedicator it has enjoined the city from proceeding with said work.

The grounds upon which appellant has proceeded in its bill for injunction, in so far as the grounds thereof are now presented, are as follows: (1) That the city has no

rightful authority to construct under the street a culvert of the character mentioned, without the consent of the dedicator and of the abutting landowner; and (2) that the work proposed is in violation of section 3327, Code 1906, section 6763, Hemingway's 1927 Code, in relation to the alteration or change of the channels of watercourses.

Upon the first ground we think the bill is not maintained. The authorities seem to be in substantial accord to the effect that "a municipality may use a street for any purpose not inconsistent with its use as a highway, and its rights are not limited to the mere surface of the street. For instance, it may lawfully use the streets for the construction of sewers, . . . or for drainage." 44 C. J., pp. 937, 938. "The accommodation of drains and sewers is one of the purposes of city streets. Hence the location of sewers in a street is not an additional servitude on the fee or an encroachment on the rights of the abutting owner." 9 R. C. L., p. 629. See, also, 4 McQuillin, Munic. Corp. (2 Ed.), secs. 1545, 1553; 3 Dillon, Munic. Corp. (5 Ed.), secs. 1148, 1154; 1 Elliott, Roads & Streets, sec. 490. Noting the enlarged rights which a city has in its streets, as compared with that appertaining to ordinary roads or highways, it is said in 3 Dillon, Munic. Corp., sec. 1154: "The public authorities . . . may make culverts, drains, and sewers on or under the surface." And, "when not done in an improper or negligent manner, the adjoining fee-holder cannot complain." The right has been thought so well established in this state, and has so many years been exercised by our municipalities, that the court has often spoken of it as a matter of course; as, for instance, in Gulfport & Mississippi Coast Traction Co. v. Manuel, 123 Miss. 266, 85 So. 308; Hazlehurst v. Mayes, 84 Miss. 7, 36 So. 33, 64 L. R. A. 805; Theobold v. Ry. Co., 66 Miss. 279, 6 So. 230, 4 L. R. A. 735, 14 Am. St. Rep. 564; Laurel v. Hearn, 143 Miss. 201, 108 So. 491.

Appellant concedes the general rule as above stated, but argues that this is a general drainage project to the burdens of which this particular street cannot be put; that the means adopted is in fact a tunnel, and is an unheard of scheme, wholly outside the contemplation of the dedicators at the time of the dedication; that the means selected is improper, and will damage the adjoining lands because of erosions, unsightliness, and the like, and that the street is an undeveloped street, and cannot be used as proposed prior to its regular use as a passageway. To these it may be replied, in brief, that the city has the undoubted right to drain Communy avenue or a portion thereof, and if in so doing, as an incident, other areas are at the same time drained, it is none the less true that still Communy avenue is all the while being drained. That the device in its exact form may not have been foreseen by the dedicators at the time is without controlling force, since the most that cities are now doing in street and other municipal improvements were never thought of in a past generation, and most that they will be doing in the future are beyond our inventions at this day. That the device will be improperly constructed and will do unnecessary damage is based on the fact that on the east end the culvert will be above the level of the ground in whole or in part for approximately twenty-five feet and on the west end about seventy-five feet, and that the discharge at the west will spread upon appellant's land. But the engineer testified that it is the purpose to entirely cover those ends with the soil taken from the excavations, and to do so will only raise the street to a height which must be attained, if any use of it as a passageway is ever accomplished; and as to the discharge on the west this will be at approximate gulf level, as we understand the record, and cannot be of a material detriment. Moreover, this all goes, not to the right of the city to do the work, but to the manner thereof, and the facts are sufficiently in issue on this point to make the finding of the

chancellor in favor of the city in respect to the particular point controlling upon us, so far as they have presently been developed in this record. That the street is undeveloped is not an objection, for, if so, many new streets could never be brought into service for passage, because of lack of power to prepare them for passage. Moreover, as already noted, it is not necessary that a proposed use of a street have relation solely to passage thereon.

Upon the second ground, we have come to the conclusion that the bill is maintained and that the injunction should not have been dissolved. The cited section of the statutes empowers the city as follows: "To establish, alter and change the channels of streams and watercourses, . . . but whenever the cost thereof will exceed an amount equal to one-fourth of the taxes of the preceding year levied for general revenue purposes, the work shall not be authorized . . . until ratified by a majority of the legal voters of the municipality." It is admitted that the cost will exceed the limited amount, and that the same has not been submitted to the voters. But it is contended by appellees, first, that Yazoo bayou is not a watercourse within the meaning of the statute, and, second, that the proposal is not to change the channel, but merely to drain or to put in a storm sewer or culvert, under the general and separate power of the city to drain its streets. However plausible and ingenious the latter argument may seem, we are constrained to the view that we must look to the actual situation, disregarding mere nomenclature, and decide the issue upon whether in fact the said bayou is a watercourse, and whether its channel will be changed in substance and in fact, although at the same time the plan is within the powers of the city respecting its street drainage.

It is admitted that, previous to the time when the ship building company filled up the lower two thousand feet, in length, of Bayou Yazoo, the said bayou was a watercourse; that it had a channel and well-defined banks with-

in which the water was wont to course. But it is argued that now, since the lower end has been filled, causing the water to back up, and form into a large, overspread surface at and near Communy avenue, there is thus at that point not a watercourse, but a pond or a pool or a lake. Appellees do not overlook, in this argument, the presence of the substituted channel placed by the ship building company below Communy avenue and thence leading the waters of Yazoo bayou into Bayou Pichot, but appellees say that this is an artificial channel, and that an artificial channel cannot be counted as a watercourse, and therefore cannot be considered a part or as a continuation of a watercourse. By the great weight of authority, however, and especially after the period of prescription has run, that which was at first an artificial channel will become a watercourse when for all the prescriptive years it has taken the place, and has served principally in lieu, of the original channel. ''A stream does not lose the attributes of a watercourse by the fact that a part of its channel may have been artificially created. The straightening of a crooked watercourse in order to facilitate the flow and avoid the flooding of bordering lands is not uncommon.'' Hornor v. Baxter Springs, 116 Kan. 288, 226 P. 779, 780. To which may be added, within the same principle, that to divert the course so long as the change has been and remains permanent, whatever may have been the particular purpose to be served, eventuates in a similar legal result. See Stimson v. Brookline, 197 Mass. 568, 83 N. E. 893, 16 L. R. A. (N. S.) 280, 125 Am. St. Rep. 382, 14 Ann. Cas. 907, and the numerous cases cited in the annotations.

The fact that the substituted channel placed by the ship building company has now fallen into disrepair, and thus causes the waters after rainfalls to back up and spread in Bayou Yazoo at said avenue and at points above, does not deprive the said bayou of its character of a watercourse. This would no more be the result than the like

would follow as to numerous other watercourses in this country which overflow and spread over adjacent territory sometimes for months at a time. 27 R. C. L., pp. 1064, 1065; Gould on Waters, sec. 264; Town of Jefferson v. Hicks, 23 Okl. 684, 102 P. 79, 24 L. R. A. (N. S.) 214; Morgan v. Morgan, 205 Ky. 545, 266 S. W. 35.

The final question whether the construction of the culvert in question will alter or change the channel is best answered, we think, by one or two simple illustrations. As already stated, the old culvert channel substituted by the ship building company was originally three feet wide and four feet deep, but the same is now partly obstructed in places, and generally is in poor condition. The presently proposed culvert is to be seven feet wide and four feet deep. It has therefore more than twice the capacity of the old culvert or artificial channel, and, being of concrete with smooth and even bed and walls, will furnish a free and unimpeded channel for the water. When installed, it will result naturally that by far the greater volume of the water will customarily go through the new culvert. If a bend in a stream were cut across by an artificial ditch or channel of such size that only the smaller portion of the water would pass through the ditch, it would not be said that the channel was altered or changed. But if by this means the greater part of the water was customarily and naturally and permanently led through the new channel, it would certainly be said that the channel had been changed, although a smaller part of the stream might still follow in its ancient course. If, in straightening a road, a new and permanent road of better grade and capacity is made, so that the greater part of the travel customarily would go the new way, it would be said that the road had been changed, although the old road be left open and in a usable condition, and should be in fact to some extent still used. If this be not the correct view, then, in order to accomplish a change or alteration, it would, in addition, be necessary to fill up,

destroy, and obliterate the old channel or the old road so that they could not be used at all, however small the remaining possible use. Such a construction would not be within the reasons of the statute. We think the undisputed facts here presented bring the case within the limitation which appellant has invoked. Wherefore the decree is reversed, the injunction is reinstated, and the cause remanded.

Reversed and remanded.