BRUNSWICK & TOPSHAM WATER DISTRICT
*vs.*
W. H. HINMAN CO., INC.

BRUNSWICK & TOPSHAM WATER DISTRICT
*vs.*
W. H. HINMAN CO., INC.

Kennebec.    Opinion, October 15, 1957.

*Verrill, Dana, Walker,*
*Philbrick & Whitehouse,* for the plaintiff.

*L. Smith Dunnack,* for the defendant.

SITTING: WILLIAMSON, C. J., WEBBER, BELIVEAU, TAPLEY, SULLIVAN, DUBORD, JJ.

SULLIVAN, J.   These two cases identical in controlling facts and in issues of law have been certified to this court upon an agreed statement of facts for decision.

The plaintiff is a body politic and corporate and a quasi municipal corporation created by a special, state, legislative act, to supply the inhabitants of two towns with water and, apropos of that, "to lay in and through the streets and highways thereof, and to take up, repair and replace all such pipes, aqueducts and fixtures as may be necessary for the objects above set forth, and whenever said district shall lay any pipes or aqueducts in any street or highway it shall cause the same to be done with as little obstruction as possible to the public travel, - - - -" P. & S. 1903, c. 158.

Prior to March A. D. 1955 and since then the plaintiff has had utility installations in Pleasant and Mill Streets, public highways in Brunswick, Maine and a part of State Highway 1.

The defendant is a resident corporation organized under general laws and for years has engaged in road construction.  In December A. D. 1955 and in January A. D. 1956 it undertook, for the State Highway Commission, a state department, to reconstruct a portion of Pleasant and Mill Streets aforementioned. R. S. c. 23, § 40.  The State Highway Commission advised the plaintiff of the contract with the defendant before any work was commenced thereon. The defendant, before beginning the street reconstruction, directed the plaintiff to relocate its installed facilities so far as necessary for the work projected.

The plaintiff, as required by the defendant, relocated its facility installations in the altered ways and institutes these actions for reimbursement for that, considerable expense.

The plaintiff contends that its charter excludes control by the municipal officers, that the State Highway Commis-

sion had no right to compel the plaintiff to relocate its facilities without compensation, that the plaintiff's facilities installed in the public ways were real estate for the taking of which reimbursement would lie and that equity and good conscience dictate reparation to the plaintiff from the defendant for the costs of relocation.

The defendant is not charged with negligence.

The State Highway Commission was acting in these matters within the scope of its functions on behalf of the State and obviously was possessed of police power. R. S. 1954, c. 23, § 19, § 27, § 38, etc. In road making and maintenance the Commission was vested with full authority and the complementary discretion and responsibility. The welfare and safety of the public are the very causes for the existence of the Commission.

In a decision lately rendered in the suit of *The First National Bank of Boston et al.* v. *Maine Turnpike Authority et al.*, this court stated, with supporting precedents, the law determinative of the issue produced in these cases. It is not deemed necessary to repeat at length here our full commentaries there. We said, in part:

> "- - - - The water districts, therefore, contend that their installations in public ways are more immanent because they derive from special, plenary franchise without any requirement of municipal permits and without reservation as to revocation or alteration. The merits of the present controversy, however, concern themselves primarily with the requirements of public travel and with the police power. The authorities which follow as well as the Maine decisions which precede establish that, whatever hierarchy of privileges in utility installations there may be, the exigencies of public travel and the police power are unremittingly paramount."

*Scranton Gas and Water Company, Appellant* v. *Scranton City,* 214 Pa. 586, 64 Atl. 84 (1906) is a case of a water company with a legislative grant to occupy the streets. The utility was denied recovery for the expense of relocating its installations from locations beneath a public street, to other streets when required to remove them because the city and a railroad were building a viaduct to eliminate a dangerous street crossing at grade.

A validly exercised police power can never be relinquished by the legislature.

> "- - - - The state may in some cases forego the right to taxation, but it can never relieve itself of the duty of providing for the safety of its citizens. *This duty, and consequent power, override all statute or contract exemption - - - - -*" (Emphasis supplied)

> *Boston and Maine Railroad Company* v. *County Commissioners,* 79 Me. 386, 393 (1887).

*County Court* v. *White,* 79 W. Va. 475, 91 S. E. 350 (1917).

> P. 479. "- - - - The right of the public in the highway, for the purpose of travel in the ordinary modes, is a primary and fundamental right and is not limited to that portion only of the right of way heretofore traveled. Respondents have a permissive and subordinate right only, which exists only so long as it does not interfere with the primary and superior rights of the traveling public. Such primary right to occupy any and all parts of the right of way for the purpose of a roadway, necessarily implies the right to widen and improve the traveled portion of the road, whenever it becomes necessary for the better accommodation of the public. This principle was not controverted in the argument. But it was contended that the poles did not interfere with travel in the roadway, and that, being in the way only of the work of improving the highway, it was, therefore, the duty,

either of the County Court or their contractors, to remove them in a careful manner, at their own expense. This is certainly not the law. - - - - -"

*Inhabitants of Paris* v. *Norway Water Company,* 85 Me. 330 (1893). The defendant, a private corporation, was a utility with a legislative charter. It had been authorized to lay its installations in public ways "under such reasonable restrictions as may be imposed by the selectmen of said towns" P. & S. 1885 c. 369, 1887 c. 46. The case decided that for tax purposes the utility installations were to be classified as real estate.

The plaintiff in the instant cases attributes great significance to this decision of *Paris* v. *Norway Water Co.* as authority for the proposition that the plaintiff's installed facilities in public ways are real estate and that it has been endowed by the legislature with contractual rights to have its facilities in public ways undisturbed even by a valid exercise of the police power unless there is made to it financial compensation or reimbursement. The court in *Paris* v. *Norway Water Co.* said:

> P. 334. "The public has an easement in land, over which streets and roads are laid, co-extensive with the necessities of public use. No title in the soil is acquired thereby, and when the ways are discontinued the easement is extinguished. Private corporations, like gas companies, water companies and street railway companies, by legislative authority, are sometimes allowed the use of the public easement to serve the necessary demands of society, and without any additional compensation to the owner of the soil. Such companies, therefore, by the public license accorded them, take no title in the land. They are simply allowed to use it for the public convenience as a counter-balancing consideration for their expenditures, giving opportunities to gather tolls from its use. In using the street or road, they place their pipes or rails in or upon the ground there permanently to remain.

> They occupy land with appliances that become valuable for the revenue they yield. These appliances are fixed, permanent, used in connection with the soil that supports and sustains them. When considered as the property of their respective companies, they are not land within the common law rule - - -"

The case of *Paris* v. *Norway Water Co.* lends no support to the plaintiff's position and that becomes more uncontrovertibly true when it is recalled that the safety of the traveling public and the police power were not components in *Paris* v. *Norway Water Co.*

The plaintiff which is a public utility of a special denomination (*Eaton* v. *Thayer*, 124 Me. 311, 313) has rights of usage in the public ways which were of a very respectable and respected order. Such rights

> "- - - - cannot be taken away in an arbitrary manner and without reasonable cause."

*Old Colony Trust Company* v. *City of Omaha*, 230 U. S. 100, 117 (1913).

But those rights are subservient to validly exercised police power.

*Owensboro* v. *Cumberland Telephone Co.*, 230 U. S. 58, 72 (1913).

The loss to the utility in these cases was *damnum absque injuria*, damage without invasion of right.

> "- - - - It purports merely to regulate the use of the streets for the convenience and safety of the public. It does not impair appellant's franchise. "- - - - It is elementary that enforcement of uncompensated obedience to a regulation passed in the legitimate exertion of the police power is not a

taking of property without due process of law.
_ _ _ _"

*New Orleans Public Service, Incorporated,* v. *City of New Orleans,* 281 U. S. 682, 686, 687 (1930).

Without express authority from the legislature the State can not pay to a utility the costs or damage for relocating installations in public ways.

*Anderson* v. *Fuller, et al.,* 51 Fla. 380 (1906) ; *Boston, Worcester & N. Y. Street Ry. Co.* v. *Commonwealth,* 301 Mass. 283 (1938) ; *Transit Commission* v. *Long Island R. R.,* 253 N. Y. 345, 171 N. E. 565 (1930).

The State would not be liable as defendant in these cases. This defendant is not liable.

*Dakota Central Telephone Company* v. *Shipman Construction Company,* 49 South Dakota 251, 255, 207 N. W. 72 (1926).

*Judgment to be entered for the defendant in each case.*