[No. A025840. Sixth Dist. Sept. 25, 1985.]

PACIFIC GAS AND ELECTRIC COMPANY, Plaintiff and Appellant, v. CITY OF SAN JOSE et al., Defendants and Respondents.

COUNSEL

Robert L. Bordon, Pamela C. Christensen and David W. Anderson for Plaintiff and Appellant.

Robert J. Logan, City Attorney, Joan R. Gallo, Acting City Attorney, William B. Mayfield, Deputy City Attorney, and Peter D. Bulens, City Attorney, for Defendants and Respondents.

OPINION

PREMO, J.*—Pacific Gas and Electric Company (PG&E) sought a judicial declaration that it was entitled to partial reimbursement of costs expended in relocating its utilities to serve certain developments within respondent

*Assigned by the Chairperson of the Judicial Council.

cities' boundaries. PG&E sought to charge the assessment districts which had been created by the cities and had benefitted from the utilities. Respondent cities of San Jose and Mountain View demurred. The demurrers were sustained without leave to amend. This appeal ensued from the judgment of dismissal. We find the trial court's determination proper and affirm the judgment.

## Factual Background

PG&E, a public utility serving gas and electric customers in northern and central California, was a party to several franchise agreements with the cities of Mountain View and San Jose which provided that when improvement or construction of public streets requires it, PG&E would relocate its facilities without expense to the municipality.

PG&E alleged that respondent City of San Jose created three new districts: (1) an improvement district (No. 81-116SJ) to widen First Street and to create a new street;[1] (2) Centre Area Improvement Project (No. AD78-34) organized by the City of Mountain View; (3) Avenue Area Improvement Project (No. AD81-12), also organized by Mountain View.

Plaintiff alleged that each project required the relocation of certain gas and/or electric facilities. Plaintiff requested that the three assessment districts pay their prorated portion of the total costs thereof, which were not otherwise collected from the cities. Defendant cities refused to pay, hence PG&E filed its amended complaint for declaratory relief. ■ Since this matter comes before us at the demurrer stage, we of course are obligated to deem all facts in the pleading to be true. (*Thompson* v. *County of Alameda* (1980) 27 Cal.3d 741, 746 [167 Cal.Rptr. 70, 614 P.2d 728, 12 A.L.R.4th 701]; *Carr* v. *Progressive Casualty Ins. Co.* (1984) 152 Cal.App.3d 881, 885 [199 Cal.Rptr. 835].)

## Discussion

PG&E raises two issues:

1. Did the court err in dismissing a declaratory relief action before considering the "substance of its claim?"

2. Can the trial court rule as a matter of law that plaintiff is not entitled to seek reimbursement?

We will discuss the issues in reverse order.

---

[1]The total cost of the project was over $33 million, of which $12,051,000 would be paid by the city and the balance by the local property owners within the improvement district.

*Entitlement to Reimbursement*

■ PG&E's obligation to relocate its equipment and its ability to seek reimbursement for such work is governed by section 6297 of the Public Utilities Code.[2] That section provides for removal or relocation of public utility facilities without charge to the city or county, when made necessary due to street renovation by the municipality.[3]

Section 6297 represents a codification of the common law requiring utility franchisees, in the absence of contrary provisions, to relocate utility facilities and equipment at their own cost when properly requested to do so by the municipality. (*L. A. County Flood Control Dist.* v. *Southern Cal. Edison Co.* (1958) 51 Cal.2d 331, 334 [333 P.2d 1]; *Southern Cal. Gas Co.* v. *City of L. A.* (1958) 50 Cal.2d 713, 716 [329 P.2d 289].) PG&E argues that the common law and section 6297 only prevents utilities from seeking reimbursement from municipal funds but not from funds collected by the city as assessments on private property to pay for a portion of street work which necessitates utility relocation. PG&E urges that the clause from section 6297 "without expense to the municipality" does not mean "without expense to the assessees."

A review of the cases interpreting section 6297 and the common law indicate an almost unanimous refusal to allow utility company franchisees to recover reimbursement for equipment relocation expenses. In *L. A. County Flood Control Dist.* v. *Southern Cal. Edison Co., supra,* 51 Cal.2d 331, the district was engaged in a flood control program, part of which involved the construction of storm drains throughout its territory. The district's territory covered several cities, each of which had franchise agreements with the utility company. The company argued that use of the public streets for storm drains could only be considered a primary use of the streets if the principal purpose of the drains were to drain the streets themselves. Since the drains had a primary purpose to drain areas surrounded by the streets and street drainage was incidental, the utility argued the district must pay for relocation of existing facilities. The court disagreed, holding drains that primarily service other areas than the streets under or across the drains' location did not affect the character of public streets or limit the public's right to use the public streets. (*Id.,* at p. 335.)

---

[2]All statutory references are to the Public Utilities Code.

[3]Public Utilities Code section 6297 provides: "The grantee shall remove or relocate without expense to the municipality any facilities installed, used, and maintained under the franchise if and when made necessary by any lawful change of grade, alignment, or width of any public street, way, alley, or place, including the construction of any subway or viaduct, by the municipality."

In reaching this decision, the court relied on its holding that same year in *Southern Cal. Gas Co.* v. *City of L. A., supra,* 50 Cal.2d 713. In that case, the city constructed a sewer partly in unincorporated county territory. The city and county had separate franchise agreements with the utility company. The company relocated lines in the city and in the county, but denied any obligation to bear the cost of the work done in county land at city request. It contended any obligation with the county could not be invoked by a city operating outside the territorial limits of the county franchise agreement. The court disagreed, holding that the utility's obligation arose due to "the paramount right of the people as a whole to use the public streets wherever located. . . ." (*Id.*, at p. 717.) The people of respondent cities San Jose and Mountain View hold the same paramount right to use the streets, whether improved or constructed, within the three area projects in question.

PG&E attempts to distinguish this general rule on a private versus public benefit theory, arguing the creation of special assessment districts to pay a portion of the three projects clearly designates the appropriate percentage of each project not benefitting the population as a whole.

■ A special assessment district is not a legal entity, but merely an area of land designated to receive benefits and improvements, and as such is specially assessed to pay for these benefits. The district is formed by resolution of the legislative body of the city or county within which it resides, and its establishment is a result only of legislative power grounded in the taxing authority of the sovereign. (*Dawson* v. *Town of Los Altos Hills* (1976) 16 Cal.3d 676, 682-683 [129 Cal.Rptr. 97, 547 P.2d 1377].) ■ An assessment district is usually created because the benefits created are totally or almost wholly local in nature, making it unjust for the general populace to be taxed for the entire cost. However, under certain circumstances, the legislature may determine a portion of the costs should be borne by the general population and paid out of the general tax fund for the benefit the general public derives. (See 51 Cal.Jur.3d, Public Improvements, § 3, pp. 565-566.) Such are the circumstances of the present action, and PG&E argues it may be reimbursed from the assessment districts a percentage of its costs equal to the portion of the funding coming from the district.

In reviewing PG&E's contention, we find no precedential authority. The fact that assessment districts are created by the city or county as funding mechanisms for certain improvements does not justify an exemption to the clear cut public policy heretofore discussed. For example, it is conceivable that a county could divide its area into various assessment districts to pay for all public improvements and lower general property taxes.

It is true that when assessment districts are created for only partial funding of the projects, an inference of partial private benefit arises. However, the

fact the cities will contribute a portion of the funding leads to the inescapable conclusion of some public benefit flowing from these projects. We are aware of no authority allowing for partial reimbursement to the franchisee when any public benefit results from the improvements causing the relocation of utility equipment.

The primary authority relied on by PG&E for its argument is a 1977 decision by the Public Utilities Commission, *Sunrise Oasis Estates* v. *Southern California Gas Company* (Jan. 24, 1978) Dec. No. 88398. In that proceeding, the city required a developer to make certain street improvements as a condition of recording a subdivision tract. Those improvements required the lowering of a Southern California Edison gas line. The PUC concluded the utility was not acting pursuant to its franchise agreement with the city when it relocated its gas lines, but rather, its work was done to enable the developer to meet the condition set by the city. The utilities actions were neither requested nor required by the city. This very fact distinguishes *Sunrise Oasis* from the present matter. If PG&E herein had moved its equipment upon request of someone other than the cities, *Sunrise Oasis* might be applicable. There is no such allegation in the complaint, however.

### Questions of Fact or Law

PG&E asserts that its entitlement to seek reimbursement from the "benefitted property owners" creates an issue of fact and therefore cannot be resolved by demurrer. We disagree, holding that the issue presented to us is a legal question. No facts here are in dispute. The only question presented can be determined as a matter of law. Demurrer is a proper method of reaching that determination. (*City of Fresno* v. *California Highway Commission* (1981) 118 Cal.App.3d 687 [173 Cal.Rptr. 671].)

The judgment is affirmed.

Agliano, Acting P. J., and Brauer, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 18, 1985.